IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:16-cr-82-9 |
| v. : | |
| : | (Judge Kane) |
| PAUL STAMM, : | |
|     Defendant : | |

**MEMORANDUM**

Presently before the Court is Petitioner Paul Stamm ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which the Court docketed on February 18, 2020. (Doc. No. 997.) For the reasons that follow, the Court will deny Petitioner's motion.

**I.   BACKGROUND**

On May 11, 2016, a grand jury returned a superseding indictment charging Petitioner and several codefendants with various child pornography-related offenses. (Doc. No. 143.) Count 2 of the superseding indictment charged Petitioner and codefendant William Chandler Augusta ("Augusta") with conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(a) and (e). (Id. at 3.) Former attorney and now Judge Jeffrey Conrad of the Lancaster County Court of Common Pleas ("Plea Counsel") represented Petitioner, who entered into plea negotiations with the Government, resulting in a plea agreement that called for him to plead guilty to Count 2 of the superseding indictment. (Doc. No. 344 ¶ 1.)

On January 4, 2017, Petitioner appeared before Magistrate Judge Carlson for a change of plea hearing. (Doc. Nos. 376, 378, 756.) Plea Counsel arrived a few minutes late, after which Magistrate Judge Carlson afforded him and Petitioner time to discuss the change of plea document and the factual basis for the plea. (Doc. Nos. 756 at 3, 764 at 21.) Assistant U.S.

Attorney James Clancy read into the record the factual basis, which Petitioner signed, recounting the following:

> [A] forensic analysis of Augusta's device located an audio recording from November 12, 2014 in which [Petitioner] and [] Augusta are instructing and forcing Victim-1 to engage in sexually explicit activity. There is no video of this offense, only the audio recording, but [Petitioner] agrees that on that occasion he was able to see Victim-1 via live video transmission, and that Victim-1 was forced to engage in sexually explicit conduct.
>
> Similarly, chat messages from February 12, 2015 between [] Augusta and [Petitioner] show the two men discussing [Petitioner] engaging in a live video communication with Victim-1. After the call the two men discussed what transpired on the video call with Augusta saying, "Dude, idk wtf you did to him. He is terrified of you."
>
> The two men continued to discuss the sadistic nature of the video that [Petitioner] had with Victim-1. There is no audio recording or video of that event, only the chat messages, but again [Petitioner] agrees that the chat messages are specifically about a live video transmission that occurred that day during which [Petitioner] could see Victim-1 engaging in sexually explicit conduct.
>
> [T]ext chat evidence recovered from [] Augusta's device shows a brief conversation between Augusta and [Petitioner] on February 28th, 2015 during which [] Augusta said, "I think he needs to have a talk with you. He's being a pussy and he's not listening, making scenes and stuff, so I think I need to let you two have another one on one session." [Petitioner] replied, "Now? I can talk to him for about five minutes just to get him in line."
>
> Within the same minute a video call begins. There is no video recording, but there is an audio recording also recovered from [] Augusta's device that begins the same minute the video call began demonstrating that [] Augusta utilized a voice memo feature on his phone to audio record the event. [Petitioner] agrees that during this event he could see Victim-1, the live video transmission and that he directed the boy to engage in sexually explicit conduct.

(Doc. No. 756 at 24-36 (emphasis added); Doc. No. 374.) During the February 28, 2015 recording recovered from Augusta's device, Petitioner directed Victim-1 to "take a shit" in his own hands, and Victim-1 can be heard crying and repeatedly asking Petitioner to stop scaring him. (Doc. No. 756 at 26-27.)

At the conclusion of the change of plea hearing, Magistrate Judge Carlson concluded that

Petitioner was fully competent to enter an informed plea, understood the consequences of his plea, that he was pleading guilty knowingly and voluntarily, and that the plea was supported by an independent basis in fact. (Doc. No. 378.) On that date, Magistrate Judge Carlson recommended that this Court accept Petitioner's guilty plea. (Id.) On January 19, 2017, the Court adopted Magistrate Judge Carlson's Report and Recommendation, accepted Petitioner's guilty plea, and scheduled Petitioner's sentencing for May 30, 2017. (Doc. No. 407.)

On May 11, 2017, Petitioner filed a motion to withdraw his guilty plea. (Doc. No. 468.) Thereafter, the Court granted Plea Counsel's motion to withdraw as counsel (Doc. Nos. 476, 500) and appointed Petitioner new counsel, David R. Erhard ("Attorney Erhard") (Doc. No. 505). The Court denied Defendant's motion to withdraw on June 14, 2017. (Doc. Nos. 525, 526.) Petitioner then filed a letter, which the Court construed as a renewed motion to withdraw his guilty plea. (Doc. No. 561.) Following a hearing held on August 8, 2017 (Doc. No. 631), the Court denied Petitioner's renewed motion to withdraw (Doc. No. 638). On September 29, 2017, the Court sentenced Petitioner to three hundred sixty (360) months' imprisonment followed by fifteen (15) years' supervised release. (Doc. No. 691.) The Court entered judgment the same day. (Id.) Petitioner timely appealed (Doc. No. 702), and in November 2018, the United States Court of Appeals for the Third Circuit affirmed the judgment of conviction. (Doc. Nos. 912, 917.)

Following the Third Circuit's affirmance of his conviction, Petitioner filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 997.)[1] Petitioner's §

---

[1] The Clerk of Court received Petitioner's motion on February 18, 2020. (Id.) Two days later, the Court directed service of the motion upon the Government (Doc. No. 1001), and service was effectuated (Doc. No. 1002). The Government then moved for an evidentiary hearing and a stay of the deadline to respond to Petitioner's motion until after such hearing. (Doc. No. 1005.) The Court granted that motion in both respects. (Doc. No. 1006, 1021.)

3

2255 motion raises three (3) grounds for relief on the basis of ineffective assistance of counsel. (Id.) While Petitioner was represented by both Plea Counsel and Attorney Erhard from the time of his arrest through sentencing, he has clarified that his ineffective assistance claims relate to Plea Counsel's representation. (Doc. No. 997, 1069.) Specifically, Petitioner asserts the following claims:

> Ground One: Plea Counsel provided ineffective assistance by misadvising Petitioner that 18 U.S.C. § 2251(a) does not require a visual depiction of sexually explicit conduct and instead indicating that audio communications alone are sufficient to sustain a conviction;
>
> Ground Two: Plea Counsel provided ineffective assistance by misadvising Petitioner that he "had no other choice" than to plead guilty, misadvising Petitioner of the absolute right to trial; and
>
> Ground Three: Plea Counsel provided ineffective assistance by communicating, explicitly or implicitly, that he would not represent Petitioner at trial.

(Doc. No. 997 at 4-7.)

The Court held an evidentiary hearing on November 19, 2020. (Doc. Nos. 1045, 1056.) Petitioner waived the attorney-client privilege as to Plea Counsel (Doc. No. 1056 at 5) and testified on his own behalf (id. at 5-31). Following the hearing, after being granted an extension of time to file a response (Doc. No. 1065), the Government filed its brief in opposition to Petitioner's § 2255 motion (Doc. No. 1066). Petitioner filed a brief in support of his motion on January 21, 2021. (Doc. No. 1069.) Petitioner did not file a reply, and, as the time for filing one has expired, the motion is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was

2255 motion raises three (3) grounds for relief on the basis of ineffective assistance of counsel. (Id.) While Petitioner was represented by both Plea Counsel and Attorney Erhard from the time of his arrest through sentencing, he has clarified that his ineffective assistance claims relate to Plea Counsel's representation. (Doc. No. 997, 1069.) Specifically, Petitioner asserts the following claims:

> Ground One: Plea Counsel provided ineffective assistance by misadvising Petitioner that 18 U.S.C. § 2251(a) does not require a visual depiction of sexually explicit conduct and instead indicating that audio communications alone are sufficient to sustain a conviction;
>
> Ground Two: Plea Counsel provided ineffective assistance by misadvising Petitioner that he "had no other choice" than to plead guilty, misadvising Petitioner of the absolute right to trial; and
>
> Ground Three: Plea Counsel provided ineffective assistance by communicating, explicitly or implicitly, that he would not represent Petitioner at trial.

(Doc. No. 997 at 4-7.)

The Court held an evidentiary hearing on November 19, 2020. (Doc. Nos. 1045, 1056.) Petitioner waived the attorney-client privilege as to Plea Counsel (Doc. No. 1056 at 5) and testified on his own behalf (id. at 5-31). Following the hearing, after being granted an extension of time to file a response (Doc. No. 1065), the Government filed its brief in opposition to Petitioner's § 2255 motion (Doc. No. 1066). Petitioner filed a brief in support of his motion on January 21, 2021. (Doc. No. 1069.) Petitioner did not file a reply, and, as the time for filing one has expired, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion. See 28 U.S.C. § 2244.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined

as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694). In the context of a petitioner who has entered a guilty plea, "the petitioner demonstrates prejudice by showing that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" See Arnold v. Superintendent SCI Frackville, 322 F. Supp. 3d 621, 632 (E.D. Pa. 2018) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985); Boyd v. Waymart, 579 F.3d 330, 350 (3d Cir. 2009)).

## III. DISCUSSION

As noted, supra, Petitioner asserts ineffective assistance of counsel in three separate claims, which the Court addresses in turn below.

### A. Ineffective Assistance of Counsel

#### 1. Ground One: Misadvising Petitioner as to the Required Proof of a Visual Depiction under 18 U.S.C. § 2251(a)

In Ground One of his motion, Petitioner asserts that Plea Counsel misadvised him that "audio communications of a sexual nature were sufficient to violate the statute and a visual depiction was not required,"[2] and that, therefore, Petitioner's decision to plead guilty was not knowing, intelligent, and voluntary. (Doc. No. 997 at 4-5.) Petitioner submits that Plea Counsel

---

[2] In this regard, 18 U.S.C. § 2251(a) provides, in part, as follows:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) . . . .

Id. (emphasis added).

6

only partially reviewed the text of 18 U.S.C. § 2251 with him and never explained the statute's elements. (Doc. No. 997 at 4.) He asserts that he would have proceeded to trial had Plea Counsel not misadvised him, arguing "that the Government possessed no evidence in the form of a visual depiction [or of the performance or viewing of a sexual act] whatsoever." (Id. at 5.) According to Petitioner, Plea Counsel presented him with the "factual basis (admitting a visual depiction) for the plea" but not until the "day of the plea" (id. at 4), and only then during a rushed discussion due to "Plea Counsel's scheduling mix-up" (Doc. No. 1069 at 8). Petitioner contends that he "did not learn of the visual depiction element until after the plea was accepted by the Court." (Doc. No. 997 at 4.)

Upon review of the first ground of Petitioner's § 2255 motion, the Court finds that Petitioner has not established that his counsel was ineffective for failing to properly advise him of § 2251's elements. None of the testimony adduced at Petitioner's evidentiary hearing persuades the Court to depart from its prior determinations—made in connection with Petitioner's motions to withdraw his guilty plea—that he entered his guilty plea knowingly, intelligently, and voluntarily, with a clear understanding of the elements of the crime to which he was pleading guilty, including the visual depiction element. (Doc. Nos. 525 at 7-9, 638 at 5-10.) As the Third Circuit stated in denying Petitioner's appeal from the Court's denials of his motions to withdraw, "the record makes clear that [he] knew precisely what crime he was admitting to and made a knowing and voluntary decision to admit to it." See United States v. Stamm, 755 F. App'x 190, 193 (3d Cir. 2018). The Court credits Plea Counsel's testimony that he had, in fact, discussed the absence of video evidence with Petitioner but nevertheless believed that the

Government could prove visual depiction circumstantially.[3] (Doc. No. 1069 at 36.) Further, Plea Counsel's assessment of the audio evidence recovered in this case—namely "that no one could listen to th[e] [] recording and not believe that someone was not simultaneously observing the child at that time"—was not objectively unreasonable. (Id.) The Court, having listened to the same recordings, is of a similar view.

The Court does not credit Petitioner's testimony that he was not aware that § 2251 requires a visual depiction. Magistrate Judge Carlson conducted an extensive colloquy at the change of plea hearing, during which Petitioner: (1) acknowledged that he had read the plea agreement and that his plea was supported by an independent basis in fact; (2) affirmed his understanding that if he went to trial, the Government would be required to prove each and every element of the offense charged against him; (3) indicated that he had addressed all of his questions regarding the plea agreement with Plea Counsel and had enough time to do so; (4) stated that he had signed the plea agreement and factual basis statement after having carefully reviewed them with Plea Counsel; and (5) represented that he understood that a plea to § 2251

---

[3] When asked, during the evidentiary hearing, whether he discussed § 2255's visual depiction requirement under § 2251 with Petitioner, Plea Counsel stated:

> Yeah. Simply because of the unique aspect of this case in the sense that there was no video, although that is required, but in this case it was the Government's contention that that could make that element of the crime out via circumstantial evidence. And after listening to the tape -- the tapes, that is, I believe that to be the case.

(Doc. No. 1056 at 67.) Indeed, it is difficult to reconcile Petitioner's contention that he was unaware of § 2251's visual depiction requirement with the fact that the charge very obviously relates to "conspiracy to produce child pornography." See 18 U.S.C. § 2251(a) (emphasis added). As this Court noted in denying Petitioner's renewed motion to withdraw his guilty plea, his "contentions amount to dissatisfaction about [Plea Counsel]'s opinion that the Government could prove Count 2 circumstantially at trial," yet he never voiced any concerns about Plea Counsel's advice during the change of plea hearing. (Doc. No. 638 at 9.)

would carry a minimum term of fifteen (15) years' imprisonment. (Doc. No. 756 at 8-28.)

Petitioner argues that he was rushed and overwhelmed at the change of plea hearing due to Plea Counsel's late arrival and the Government's last-minute reluctance to waive the mandatory minimum.[4] However, well before the change of plea hearing, at his arraignment, Petitioner acknowledged that he understood the charge against him as set forth in the superseding indictment. (Doc. No. 506 at 9.) While Petitioner now disclaims ever having received a copy of the superseding indictment—despite his acknowledgement that he did, in fact, receive a copy (id. at 5)—he testified at his evidentiary hearing that he subsequently reviewed that document (Doc. No. 1056 at 18-20). The superseding indictment, on the one page in which Petitioner was charged, very clearly refers to the transmission of a "live visual depiction." (Doc. No. 143 at 3.)

Also at the change of plea hearing, the prosecutor read into the record that Petitioner had signed a factual basis statement as part of his plea agreement (Doc. No. 374), which provided that the stipulated facts therein proved the charged offense beyond a reasonable doubt. As referenced, supra, the prosecutor summarized the factual statements on the record, including the

---

[4] More specifically, Petitioner asserts that Plea Counsel had led him to believe that the fifteen-year (15) mandatory minimum would not apply, and that it was only at the outset of his change of plea hearing that he learned that the Government would not do so. (Doc. No. 1056 at 10-11.) Petitioner notes that Plea Counsel had approached the Government at the change of plea hearing to discuss the possibility of a sentence falling beneath the fifteen-year (15) mandatory minimum, but the Government responded in the negative, and Plea Counsel relayed that response to Petitioner. (Id. at 11.) Petitioner asserts that this revelation resulted in his being so overwhelmed that he could no longer enter a knowing, intelligent, and voluntary plea. As to this assertion, the Court credits Plea Counsel's testimony that he had "[r]epeatedly" informed Petitioner about the fifteen-year (15) minimum, a fact with which Petitioner "could never come to grips . . . ." (Id. at 36-37.) The Court also credits Plea Counsel's testimony that had hoped that the Government would show leniency if Petitioner "should plead guilty and . . . beg mercy of the Court . . . ." (Id. at 38.) In addition, at the change of plea hearing, Petitioner indicated on more than one occasion that he understood that he was facing a minimum of fifteen (15) years' imprisonment, and he made no effort to alert Magistrate Judge Carlson to any confusion about that issue, instead indicating his satisfaction with Plea Counsel's representation. (Id. at 13-15.)

9

following: (1) Petitioner agrees that he viewed the child-victim performing forced, sexually explicit conduct over live-video transmission; and (2) Petitioner agrees that he watched the child-victim over live video transmission as he directed him to engage in sexually explicit conduct. (Doc. No. 756 at 24-37; see Doc. No. 374.) During the colloquy, Petitioner did not hesitate to interject to ask Plea Counsel to clarify with the Court that he and the Government had negotiated a $10,000 forfeiture in lieu of "going after [Petitioner's] house" (id. at 19), but he did not voice any concern about his purported lack of knowledge concerning § 2251's elements, even after the Government read the factual basis into the record. Petitioner also represented that despite being nervous, he was feeling "okay," and while at one point he requested to put his head down because he felt a "little light[]headed," Magistrate Judge Carlson permitted him to sit down, and Petitioner otherwise stated that he was able to proceed. (Id. at 5-6, 9, 23-24.) His assertion that he was too overwhelmed to be able to comprehend the plea is therefore unsupported by the record.

Because the Court is convinced that Petitioner was fully apprised and aware of § 2251's visual depiction element and pleaded guilty knowingly, intelligently, and voluntarily, he has failed to demonstrate that Plea Counsel was ineffective for misadvising him that § 2251 does not require evidence of a visual depiction. He has established neither that Plea Counsel's representation was deficient nor that any deficiency prejudiced him under Strickland.

### 2. Ground Two: Misadvising Petitioner that He Had No Other Choice but to Plead Guilty

In Ground Two of his motion, Petitioner argues that Plea Counsel misadvised "[him] that he 'had no other choice' but to plead guilty." (Doc. No. 997 at 6.) Petitioner maintains that Plea Counsel "was so convinced of the wisdom of taking the plea and trying to mitigate sentence that trial was not presented to [Petitioner] as an available procedural option." (Doc. No. 1069 at 8.)

10

As to this second ground, Petitioner has not established that Plea Counsel provided constitutionally deficient assistance. Petitioner "relies merely on his own bald allegations, without supporting affidavits, that he was not informed of this right." See, e.g., United States v. Lilly, No. 04-cv-503, 2006 WL 544464, at *3 (W.D. Pa. Mar. 6, 2006). Moreover, he testified at the evidentiary hearing that he was "of course" aware of his right to a jury trial. (Doc. No. 1056 at 8.) While Plea Counsel believed that the evidence was so damning that Petitioner's best course was to plead guilty, Plea Counsel testified that he had never advised Petitioner that "he could not go to trial." (Doc. No. 1056 at 38.) To the contrary, Plea Counsel testified that "[Petitioner] was welcome to go to trial if he chose to do so" (id.), and Petitioner has not pointed to any evidence to the contrary.

Further, during the change of plea hearing, Petitioner expressly stated that he understood that he had a right to a jury trial and that, by pleading guilty, he would be giving up that right. (Doc. No. 756 at 6-8.) After Magistrate Judge Carlson apprised Petitioner of other rights attendant to a jury trial (e.g., that the Government would be required to prove each element of the offense beyond a reasonable doubt), Petitioner stated that it was his desire to give up his right to a jury trial and instead enter a plea of guilty. (Id.) Based on the record before it, the Court is unable to conclude that Plea Counsel failed to advise Petitioner of his right to a jury trial. Nor can it be said Petitioner was prejudiced, even assuming Plea Counsel did not adequately apprise him of the right to a jury trial, in light of the thorough colloquy conducted during the change of plea hearing.[5]

---

[5] Petitioner argues that if Plea Counsel had properly informed him of his absolute right to a jury trial, he would have proceeded to trial because doing so "could have resulted in no worse outcome for [him] than the plea did" given that the Court ultimately sentenced him to three hundred sixty (360) months' imprisonment, the maximum sentence for his crime of conviction. (Doc. No. 1069 at 9.) However, the fact that Petitioner was ultimately sentenced to three

11

### 3. Ground Three: Plea Counsel's Representation that He Would Not Represent Petitioner at Trial

Finally, in Ground Three, Petitioner contends that Plea Counsel informed him that he would not represent Petitioner at trial. (Doc. No. 997 at 7.) Despite raising this argument in his initial motion papers (id.), Petitioner does not address this claim in his post-hearing brief (Doc. No. 1069). To the extent Petitioner has not abandoned this claim, it is unavailing. At the evidentiary hearing, Plea Counsel was asked whether he had informed Petitioner that he would not represent him at trial. Plea Counsel responded as follows:

> The only time that discussion ever occurred was after his attempt to withdraw the guilty plea. At that point, as his counsel, I had already gone through the factual analysis with him, he had already told me what had actually happened and, of course, then in the courtroom had agreed to that conduct. At that point strategically, as a defense attorney, I can't now put him on the stand and argue that he didn't see it after he just admitted that he did.
>
> And it was only at that point that I sa[id] to [Petitioner] if that's the course you decide to take, that you're going to now plead actual innocence, then you are going to need to get another attorney. That was only after his desire to withdraw the plea.

(Doc. No. 1056 at 38-39.)

Petitioner has not pointed to any evidence refuting Plea Counsel's testimony, which the Court therefore credits, particularly given that Plea Counsel subsequently moved to withdraw as counsel due to "irreconcilable differences," corroborating his testimony. (Doc. No. 476.) There is no evidence that Plea Counsel informed Petitioner—prior to or during the change of plea hearing—that he would not represent him at trial. Therefore, there is no merit to Petitioner's argument that Plea Counsel induced him to plead guilty and forgo a jury trial by representing that

---

hundred sixty (360) months' imprisonment does not support his assertion that, at the time he pleaded guilty, he would have proceeded to trial but for Plea Counsel's alleged failure to properly advise him of the right to a jury trial (or, for that matter, the fifteen-year (15) mandatory minimum term of incarceration).

Plea Counsel would not represent him if he chose to proceed to trial. As such, Petitioner has failed to establish that Plea Counsel was deficient, much less that any perceived deficiency prejudiced Petitioner in connection with his guilty plea.

     **B.    Certificate of Appealability**

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because the Court concludes that Petitioner's claims of ineffective assistance are meritless, the Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. Accordingly, a COA will not issue in this case.

**V.    CONCLUSION**

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 997) and will not issue a COA. An appropriate Order follows.